# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

HENNESSY CADILLAC, INC.,   )
VALLEY PARTNERS, INC.,    )
TUXEDO PARTNERS, INC., and   )
WOODSTOCK PARTNERS, LLC,  )
               )  CIVIL ACTION FILE
  Plaintiffs,        )  NO. _____
               )
v.              )
               )
PERFORMANCE AUTOMOTIVE   )
MANAGEMENT, INC., and    )
PATRICK BROWN,      )
               )
  Defendants.       )

## VERIFIED COMPLAINT FOR
## DAMAGES AND INJUNCTIVE RELIEF

Pursuant to Rule 3 of the Federal Rules of Civil Procedure, Plaintiffs Hennessy Cadillac, Inc., Valley Partners, Inc., Tuxedo Partners, Inc., and Woodstock Partners, LLC (collectively the "Hennessy Auto Dealerships") hereby file their Verified Complaint for Damages and Injunctive Relief against Defendants Performance Automotive, Inc. and Patrick Brown (collectively the "Defendants"), showing as follows:

## THE PARTIES

1.

Hennessy Cadillac, Inc. ("Hennessy Cadillac") is a Georgia corporation with its principal place of business located at 3040 Piedmont Road, Atlanta, Georgia.

2.

Valley Partners, Inc. is Georgia corporation with its principal place of business located at 8931 Highway 92, Woodstock, Georgia 30189.

3.

Tuxedo Partners, Inc. is a Georgia corporation with its principal place of business located at 5955 Peachtree Industrial Boulevard, Atlanta, Georgia.

4.

Woodstock Partners, LLC ("Woodstock") is a Georgia limited liability company with its principal place of business located at 990 Mansell Road, Roswell, Georgia. Woodstock's members are all residents of the state of Georgia.

5.

Defendant Performance Automotive Management, Inc. ("Performance") is a Florida corporation with its principal place of business located at 2211 E. Sample Road, Suite 103, Lighthouse Point, Florida 33064.

6.

Defendant Patrick Brown ("Brown") is an individual resident of the state of Florida. Brown may be served with process at 2211 E. Sample Road, Suite 103, Lighthouse Point, Florida 33064. Brown is the principal in Performance and, upon information and belief, controls Performance's business operations and financial affairs and accounts.

## JURISDICTION AND VENUE

### 7.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of costs and interest.

### 8.

This Court has personal jurisdiction over the Defendants as the Defendants have transacted business in this state (including negotiating and executing the contract out of which some of the claims in this case arise), have consented to personal jurisdiction in this state, and/or have committed torts that have caused injury to the Hennessy Auto Dealerships, who are located in this state.

### 9.

Venue is proper in this Court as a substantial part of the events or omissions giving rise to the claims occurred in Atlanta.

## FACTS

### 10.

The Hennessy Auto Dealerships own and operate number of new and used car dealerships in and around the Atlanta metropolitan area.

### 11.

In or about June 2010, the Hennessy Auto Dealerships (doing business as Hennessy Automotive Group) entered into a "Tire and Wheel Program

Agreement" (the "Agreement") pursuant which Performance agreed to administer a warranty program (the "TWC Program") offered by the Hennessy Auto Dealerships to their respective customers (collectively the "Customers" and individually a "Customer").   Under the TWC Program, the Customers could purchase contracts (collectively the "Warranty Contracts") that would provide payment for certain claims arising from damage to tires and wheels of a Customer's vehicle.   A true and correct copy of the Agreement (with certain confidential financial information redacted) is attached hereto and incorporated herein by reference as Exhibit A.

12.

Pursuant to the terms of the Agreement, Performance was obligated to maintain a "reserve account . . . to pay Claims" made by the Customers (called the "Master Reserve Account" in the Agreement).

13.

If any sums remained in the Master Reserve Account after payment of all claims made under applicable Warranty Contracts, the Hennessy Auto Dealerships were entitled to receive a portion of that money.

14.

Pursuant to the terms of the Agreement, Performance was also obligated to "[a]cquire and maintain appropriate stop-loss insurance from Lloyds of London . . . for the TWC Program."

15.

Pursuant to the terms of the Agreement, Performance, through Brown, established two escrow accounts (collectively the "BofA Escrow Accounts") at Bank of America to act as the Master Reserve Account with regard to certain Warranty Contracts purchased by Customers of the Hennessy Auto Dealerships. The BofA Escrow Accounts have the following account numbers: xxxx xxxx 2927 and xxxx xxxx 6320.

16.

Pursuant to the terms of the Agreement, Performance, through Brown, established a third escrow account (the "Wells Escrow Account") at Wells Fargo to act as the Master Reserve Account with regard to certain other Warranty Contracts purchased by Customers of the Hennessy Auto Dealerships. The Wells Escrow Account has the following account number: xxxxxx8088.

17.

From 2010 and continuing through 2014, Performance maintained the Bof A Escrow Accounts and the Wells Escrow Account (collectively the "Escrow Accounts") in accordance with the terms of the Agreement.

18.

On an annual basis, the Hennessy Auto Dealerships conducted audits of the Escrow Accounts to confirm that the funds required to pay claims made by Customers under the TWC Program were being maintained.

19.

In April 2015, Performance, through Brown, provided the Hennessy Auto Dealerships with account statements for the Escrow Accounts showing that the accounts contained a combined total of $2,666,331.58 as of March 31, 2015.

20.

The person at the Hennessy Auto Dealerships with responsibility for the TWC Program is Joel McGlamry.  Mr. McGlamry holds the position of Vice President, Finance Operations.

21.

On July 29, 2105, Mr. McGlamry was informed that Brown had been involuntarily committed for psychiatric treatment.

22.

As a result of the information he received concerning Brown's mental health, Mr. McGlamry became concerned about Performance's ability to continue administering the TWC Program.

23.

Mr. McGlamry telephone BofA's automated customer service line and made balance inquiries concerning the BofA Escrow Accounts.  Through those inquiries, Mr. McGlarmy learned that one of the BofA Escrow Accounts had been closed with no balance and the other remained open but had a negative balance of $35.00.

24.

Mr. McGlamry also learned that the Wells Escrow Account (which held in excess of $1 million as of March 31, 2015) currently has an available balance of only $24,907.13.

25.

Mr. McGlamry has attempted without success to obtain information concerning the status of the Escrow Accounts and the location of the more than $2 million that, until recently, was contained in the Escrow Accounts.

26.

Recent activity in the Escrow Accounts (obtained through automated account information sources) demonstrates that the funds in the Escrow Accounts were not being used in accordance with the Agreement (i.e., to pay claims submitted by Customers), but were instead transferred in and out of the Escrow Accounts at will at the direction of Brown and/or others at Performance. That unauthorized use of the Escrow Accounts constitutes a breach of the Agreement.

27.

Upon information and belief, Brown individually controls the Escrow Accounts and directed the diversion of funds contained in the Escrow Accounts.

28.

The Hennessy Auto Dealerships has also learned that Performance has failed to maintain the stop-loss insurance required under the Agreement, thereby breaching the Agreement.

29.

The Hennessy Auto Dealerships have provided notice to counsel for the Defendants, David P. Reiner, of the dissipation of the funds held in the Escrow Accounts.   The Hennessy Auto Dealerships also demanded that Performance immediately cease using the escrow Accounts and provide an accounting for any funds that passed through those accounts.  A letter providing that notice is attached hereto and incorporated herein by reference as Exhibit B.

30.

The Hennessy Auto Dealerships received no reply to the communication to the Defendants' counsel.

31.

The Hennessy Auto Dealerships are concerned that, in the absence of an immediate injunction, funds remaining in the Escrow Accounts will be dissipated and/or commingled with other funds of Performance and will no longer be available to pay claims submitted by Customers and/or to pay the Hennessy Auto Dealerships the sums to which it would be entitled under the Agreement.

32.

All conditions precedent to the commencement of this action have occurred, have been satisfied, and/or have been waived.

## COUNT ONE - INJUNCTION

33.

The Hennessy Auto Dealerships restate and incorporate by reference as if set forth fully herein the averments contained in paragraphs 1 through 32 above.

34.

A party seeking a preliminary injunction must demonstrate (a) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (b) a likelihood of irreparable injury in the absence of an injunction; (c) that the balance of hardships tips in the plaintiff's favor; and (d) that the public interest would not be disserved by the issuance of an injunction.

35.

The purpose of issuing a preliminary injunction is to preserve the status quo and prevent irreparable harm until the Court has an opportunity to rule on the merits of the claims presented.

36.

A decision to grant or deny a preliminary injunction is committed to the discretion of the district court.

37.

In order to preserve the status quo and prevent further dissipation of the funds held in the Escrow Accounts, an order should be issued freezing the Escrow Accounts temporarily.  A proposed order granting the injunction is attached hereto and incorporated herein by reference as Exhibit C.

## COUNT TWO - ACCOUNTING

38.

The Hennessy Auto Dealerships restate and incorporate by reference as if set forth fully herein the averments contained in paragraphs 1 through 32 above.

39.

The Escrow Accounts were created and maintained pursuant to the requirements of the Agreement and were intended to benefit the Hennessy Auto Dealerships.

40.

The Hennessy Auto Dealerships are entitled to an accounting for the funds that were deposited into and then transferred out of the Escrow Accounts pursuant to O.C.G.A. § 23-2-70.

## COUNT THREE – BREACH OF THE AGREEMENT

41.

The Hennessy Auto Dealerships restate and incorporate by reference as if set forth fully herein the averments contained in paragraphs 1 through 32 above.

42.

By its actions as set forth above, Performance has breached the Agreement, including by, among other things, failing to maintain stop-loss insurance and failing to maintain the Escrow Accounts for the benefit of the Hennessy Auto Dealerships and the Customers.

43.

The Hennessy Auto Dealerships hereby demands that Performance restore any funds improperly drawn from the Escrow Accounts.

44.

As a result of Performance's breach of the Agreement, the Hennessy Auto Dealerships have suffered losses, costs, injuries, and damages in an amount to be determined at trial, but which amount is not less than $1.5 million, plus interest.

45.

Pursuant to the terms of the Agreement, the Hennessy Auto Dealerships are entitled to recover their attorneys' fees and other costs and expenses of this litigation.

46.

Alternatively, Performance's actions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused the Hennessy Auto Dealerships unnecessary trouble and expense entitling the Hennessy Auto

Dealerships to recover their costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT FOUR – BREACH OF FIDUCIARY DUTY

47.

The Hennessy Auto Dealerships restate and incorporate by reference as if set forth fully herein the averments contained in paragraphs 1 through 32 above.

48.

In establishing and administering the Escrow Accounts, the Defendants assumed a fiduciary relationship to the Hennessy Auto Dealerships.

49.

By their actions as set forth above, the Defendants have breached their fiduciary duties to the Hennessy Auto Dealerships.

50.

As a result of the Defendants' breach of fiduciary duty, the Hennessy Auto Dealerships have suffered losses, costs, injuries, and damages in an amount to be determined at trial, but which amount is not less than $1.5 million, plus interest.

51.

The Defendants' actions as set forth above were wanton, willful, intentional, fraudulent, and oppressive and intended to cause harm to the Hennessy Auto Dealerships, thereby entitling the Hennessy Auto Dealerships to recover punitive damages in an amount to be determined at trial pursuant to O.C.G.A. § 51-12-5.1.

52.

The Defendants' actions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused the Hennessy Auto Dealerships unnecessary trouble and expense entitling the Hennessy Auto Dealerships to recover their costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, the Hennessy Auto Dealerships pray this Court:

1.     Enter an order granting an injunctive immediately freezing the Escrow Accounts for a period of fourteen (14) days so that an investigation may be made of the funds paid into and out of the Escrow Accounts;

2.     Order an equitable accounting of the funds that were deposited into and withdrawn from the Escrow Accounts pursuant to O.C.G.A. § 23-2-70;

3.     Enter judgment against Performance under Count Three of this Complaint and award the Hennessy Auto Dealerships damages in an amount to be determined at trial;

4.     Enter judgment against the Defendants, jointly and severally, under Count Four of this Complaint and award the Hennessy Auto Dealerships damages in an amount to be determined at trial;

5.      Enter judgment against the Defendants, jointly and severally, and award the Hennessy Auto Dealerships punitive damages in an amount to be determined at trial pursuant to O.C.G.A. 51-12-5.1;

6.      Enter judgment against Performance under Count Three and award the Hennessy Auto Dealerships attorneys' fees and other expenses of this action pursuant to the terms of the Agreement, or, alternatively, pursuant to O.C.G.A. § 13-6-11;

7.      Enter judgment against the Defendants, jointly and severally, under Count Four and award the Hennessy Auto Dealerships attorneys' fees and expenses of this action pursuant to O.C.G.A. § 13-6-11;

8.      Tax all costs of this action against the Defendants, jointly and severally; and

9.      Grant the Hennessy Auto Dealerships such other and further relief as the Court deems just and proper.

This 30th day of July, 2015.

JAMES-BATES-BRANNAN-GROOVER-LLP


By: /S/ William J. Sheppard
    William J. Sheppard
    Georgia Bar No. 641980
    Alec N. Sedki
    Georgia Bar No. 634080

3399 Peachtree Road
Suite 1700
Atlanta, Georgia 30326
wsheppard@jamesbatesllp.com
asedki@jamesbatesllp.com
(404) 997-6020
(404) 997-6021 (fax)

## **VERIFICATION**

Before the undersigned officer, duly authorized to administer oaths, the undersigned appeared and swore as follows:

My name is Joel McGlamry.  I am over the age of twenty-one (21) years suffer from no legal disability, and am otherwise competent to provide this Verification.  I am employed by the Hennessy Auto Dealerships and hold the position of Vice President, Finance Operations.  I have held that position since July 5, 2005.  The business relationship between the Hennessy Auto Dealerships and Performance Automotive Management, Inc. falls within my area of responsibility and supervision.  I have reviewed the factual allegations contained in the Verified Complaint for Damages and Injunctive Relief and state that those factual averments are true and correct.

JOEL MCGLAMRY

Sworn to and subscribed before me
This _30th_ day of July, 2015.

Notary                          [Seal]

My commission expires: _____

## TIRE AND WHEEL PROGRAM AGREEMENT

This TIRE AND WHEEL PROGRAM AGREEMENT (the "Contract") is made this _____ day of _____, 20____, between **Performance Automotive Management** (hereafter referred to as "**Performance**") and **Hennessy Automotive Group** (hereafter referred to as "**Hennessy**") and contains the following terms and conditions:

**WHEREAS,** Hennessy desires to create a program (the TWC Program") by which Hennessy may offer to purchasers or owners of new and used vehicles (collectively the "Customers' and individually a "Customer") the right to buy contracts (hereinafter referred to collectively as "TWCs") that will, subject to certain limitations, provide for payment of the claims arising from damage to tires and wheels of a Customer's vehicle (collectively "Claims"); and

**WHEREAS,** Performance is in the business of administering programs like the TWC Program contemplated by Hennessy; and

**WHEREAS,** Hennessy and Performance (collectively the "Parties" and individually a "Party") agree that Performance will administer the TWC Program for Hennessy and desire to memorialize the terms of their agreement in writing,

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein the parties agree as follows:

I.      **Performance shall:**

    1.      Maintain a TWC Program available for Hennessy to market to its Customers during the term of this Contract;

    2.      Acquire and maintain appropriate stop-loss insurance from Lloyds of London (the "Insurer") for the TWC Program;

    3.      Maintain a reserve account (the "Master Reserve Account") to pay Claims;

    4.      Prepare and supply to Hennessy all forms of documents necessary to the implementation of the TWC Program, including, without limitation, applications to be completed by Customers seeking to purchase a TWC, form TWCs, and promotional and marketing materials;

    5.      Promptly review any application submitted by a Customer seeking to purchase a TWC and, provided that the Customer owns or is purchasing an Eligible Vehicle (as that term is defined in the Rate Classification Sheet attached hereto as Exhibit A), approve the issuance of a TWC by Hennessy;

    6.      Establish a dedicated, toll-free customer service telephone line and department (the "Claims Department") to receive, process, and resolve Claims submitted by Customers. All decisions regarding the payment of Claims are the sole responsibility of Performance. Upon approval of a Claim, payment will be made by Performance to the repairing dealership by credit card.;



7.    Receive a fee for administering the TWC Program in accordance with the Fee Schedule attached hereto as Exhibit B;

8.    NOT be liable to Hennessy or any Customer for any TWC not reported to or approved by Performance or for which Performance has not received payment as provided in Section II.2 below;

7.    Create a database that will be used for tracking TWCs and Claims made under them. Hennessy shall have reasonable access to the information contained in the database upon written request to Performance;

8.    As between the Parties to this Contract, be solely responsible for the payment of Claims from the Master Reserve Account and the solvency of the Insurer.  If for any reason Performance is unable to pay a Claim or Claims from the Master Reserve Account and the Insurer fails to pay such Claim or Claims, Performance will pay such Claim or Claims;.

9.    Receive  REDACTED  of earned reserves released by the Insurer; and

10.   Provide Hennessy with a report, in a form reasonably acceptable to Hennessy, concerning the status of the Master Reserve Account not less than once every three (3) months.

II.    **HENNESSY SHALL:**

1.    Not make any representations or warranties to Customers concerning the TWC Program other than as set forth in the written materials provided by Performance pursuant to Section I.4 above;

2.    Submit to Performance all TWCs sold by Hennessy and remit all fees (net of Hennessy's approved costs as described in Exhibit C attached hereto) specified in Exhibit "A" by the fifteenth (15th) day of the month following the month in which the TWC was issued.  All fees received by Hennessy for or on behalf of Performance shall be held by Hennessy as a fiduciary and shall not be used for purpose other than as provided in this Contract;

3.    Offer a TWC to each Customer of Hennessy who purchases or owns an Eligible Vehicle;

4.    Collect sales tax or other taxes due in connection with the sale of TWCs and remit those sums to the appropriate taxing authorities in a timely manner;

5.    Provide to every Customer the rules, regulations, terms, conditions and procedures of the TWC Program as described in the written materials provided by Performance;

6.    Not make any repairs of vehicles covered under a TWC without prior authorization from Performance Claims Department;

7.    Immediately notify Performance of any legal action or regulatory complaint or inquiry brought against Hennessy which relates, in any way, to a Performance TWC, the TWC Program contemplated by this Contract, and/or Hennessy's methods of marketing the TWC Program;

8.     Abide by the terms of this Contract, the rules of the TWC Program, and any current TWC Program manual prepared by Performance;

9.     In the event of cancellation of any TWC, repay the unearned portion of the Hennessy's profit, if any, within thirty (30) days from notice from Performance. It is Hennessy's responsibility to make the full refund to the Customer in accordance with the terms of the TWC based upon the actual TWC price paid; and

10.     Receive REDACTED of earned reserves as released by Insurer.

## IV.   INDEMNIFICATION.

1.     Hennessy shall defend, indemnify, and hold Performance (and all of its officers, directors, shareholders, agents, employees, and representatives) harmless from and against all claims, actions, causes of action, damages, losses, costs, and expenses (collectively the "Indemnified Losses") arising from or relating in any way to Hennessy's negligent act or omission, intentional wrongful acts or omissions, or breach of the obligations imposed on Hennessy under this Contract, including, without limitation, reasonable attorneys' fees incurred in defending any such action; provided, however, Performance shall: (a) promptly report to Hennessy the existence of any event, act, or omission giving rise to an Indemnified Loss after Performance knew or reasonably should have known of such event, act, or omission; (b) promptly tender to Hennessy the defense of the claim giving rise to such Indemnified Loss; and (c) cooperate with Hennessy in the defense of any claim asserted in connection with the Indemnified Loss, which defense may be conducted by counsel selected by Hennessy and reasonably acceptable to Performance.

2.     Performance shall defend, indemnify, and hold Hennessy (and all of its officers, directors, shareholders, agents, employees, and representatives) harmless from and against all Indemnified Losses arising from or relating in any way to Performance's negligent act or omission, intentional wrongful acts or omissions, or breach of the obligations imposed on Performance under this Contract, including, without limitation, reasonable attorneys' fees incurred in defending any such action; provided, however, Hennessy shall: (a) promptly report to Performance the existence of any event, act, or omission giving rise to an Indemnified Loss after Hennessy knew or reasonably should have known of such event, act, or omission; (b) promptly tender to Performance the defense of the claim giving rise to such Indemnified Loss; and (c) cooperate with Performance in the defense of any claim asserted in connection with the Indemnified Loss, which defense may be conducted by counsel selected by Performance and reasonably acceptable to Hennessy.

## V.   ARBITRATION.

All claims or disputes relating to this Contract or the breach thereof shall be decided by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration requirement established in this Section shall be specifically enforceable as provided in the Georgia Arbitration Act and the Federal Arbitration Act. The Parties agree to use one (1) arbitrator, regardless of the amount in controversy. Any arbitration undertaken pursuant to this Section must be commenced within one (1) year after the claim or dispute arises. The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction. The venue for any

arbitration proceedings shall be Atlanta, Georgia. The prevailing party in any arbitration shall be entitled to recover its reasonable costs and expenses of the arbitration, including reasonable attorneys' fees.

## VI.   MISCELLANEOUS PROVISIONS.

This Contract shall be governed by and construed in accordance with the laws of the State of Georgia without regard to conflicts of law. This Contract and the Exhibits attached hereto constitute the entire agreement of the Parties with regard to the subject matter hereof and all prior statements, representations, or agreements between the Parties are merged into this Contract and are of no further force and effect. This Contract may be modified only by a written document signed by each of the Parties hereto.

## VII.   DURATION AND ASSIGNMENT.

Neither this Contract nor any rights, duties, or obligations herein shall not be assigned by either Party except by written consent of the other and any such assignment without such consent in writing shall be void and have no force or effect, provided however, that such written consent shall not be unreasonably withheld. This Contract is effective from the date signed by the last Party (as indicated below) and shall remain in effect perpetually until terminated by a Party hereto. Either Party may terminate this Contract in its sole discretion upon thirty (30) days written notification sent by certified mail to the last known address of the other Party. This Contract shall cease and terminate on the date so fixed, provided that termination shall not affect the obligations, duties, responsibilities, and liabilities of the Parties set out in the Contract arising prior to the date of termination, including Performance's obligations to process and pay Claims under TWCs issued prior to the effective date of the termination. The Parties' obligations under Sections IV and V above specifically survive termination of this Contract..

HENNESSY                                  PERFORMANCE AUTOMOTIVE MANAGEMENT

By: _____             By: _____
      Hennessy's Signature                      Patrick Brown

_____                 Its: _____
Name and Title

Exhibit "A"



# Confidential Hennessy Automobile Companies Rate Schedule
## Effective September 1, 2010

| Vehicle Class | 12 months | 24 months | 36 months | 48 months | 60 months |
|---|---|---|---|---|---|
| Class One | | | | | |
| Class Two | | | | | |
| Class Three | | REDACTED | | | |
| Class Four | | | | | |
| Class Five | | | | | |
| Class Six | | | | | |

**Terms & Coverage:**
- Unlimited claim benefits
- No occurrence limitation
- Tire must have minimum 3/32" tread depth
- Replacement Only

## Vehicle Classification & Eligibility Guide

**Class One –**
All makes/models not defined in classes two through five or excluded

**Class Two –**
Acura, Cadillac, Hummer 1 & 2, Lincoln, Smart, Volkswagen, Volvo

**Class Three –**
Lexus

**Class Four –**
Audi, Chevrolet Corvette, Dodge Viper, Ford F40-GT, Mercedes-Benz, Mini-Cooper, Nissan GT-R, Land Rover, Infiniti, Saab

**Class Five –**
Jaguar

*Class Six*
*Aston Martin, BMW, Maserati, Porsche*

*Excluded Vehicles:*
Bentley, Ferrari, Lamborghini, Lotus, Maybach, McLaren, Rolls-Royce

2310 E. Atlantic Blvd Suite 205 Pompano Beach Fl 33062
Phone 877-778-5570 Fax 954-933-7714





**JAMES** BATES

JAMES ■ BATES ■ BRANNAN ■ GROOVER LLP

William J. Sheppard, Esq.
(404) 997-6026 (direct)
wsheppard@jamesbatesllp.com

**PLEASE RESPOND TO
ATLANTA OFFICE**

July 29, 2015

**VIA ELECTRONIC MAIL:**
**dpr@reinerslaw.com**

**VIA FACSIMLE NO. 305-670-8989**

David P. Reiner, Esq.
Reiner & Reiner, PA
One Datran Center
9100 South Dadeland Boulevard
Suite 901
Miami, Florida 33156

**EXHIBIT**

Re:     Performance Automotive Management, Inc.

Dear Mr. Reiner:

This firm and the undersigned represent Hennessy Cadillac, Inc., Valley Partners, Inc., Tuxedo Partners, Inc., and Woodstock Partners, LLC (collectively "Hennessy"). I understand from a brief conversation with a representative of Performance Automotive Management, Inc. ("Performance") that you represent Performance. I attempted to reach you by telephone earlier today, but was only able to leave a voice message. I am writing this letter since I have not heard back from you in response to that voice message.

In or about June 2010, Hennessy entered into a "Tire and Wheel Program Agreement" (the "Agreement") with Performance. Under the terms of the Agreement, Performance agreed to administer a program for Hennessy's benefit through which Hennessy could offer its customers (collectively the "Customers") the right to buy a warranty that would pay for certain damage to tires and wheels of the Customers' vehicles.

Also pursuant to the Agreement, Performance was required to create and maintain a reserve account (called the "Master Reserve Account" in the Contract) in order to pay claims submitted by Hennessy's Customers. In accordance with that provision of the Agreement, Performance created several escrow accounts (the "Escrow Accounts") with Bank of America ("BofA") and Wells Fargo ("Wells"). The Escrow Accounts held at BofA were identified as "Performance/Hennessy Escrow Account" and "Performance/Hennessy Escrow B Acct." The Escrow Account at Wells did not

MACON
231 RIVERSIDE DRIVE ■ MACON, GEORGIA  31201
478.742.4280 ■      478.742.8720

ATLANTA
3399 PEACHTREE ROAD, NE  SUITE 1700 ■ ATLANTA, GEORGIA  30326
404.997.6020 ■      404.997.6021

ATTORNEYS AT LAW  -  A LIMITED LIABILITY PARTNERSHIP  -  GEORGIASLAWFIRM.COM

● Page 2 of 2

reference that it contained escrowed funds, but was clearly intended to satisfy the required of a Master Reserve Account under the Agreement.

In April 2015, Performance provided Hennessy with account statements for the three Escrow Accounts. Those account statements indicated than the Escrow Accounts contained a combined total or more than $2.66 million as of March 31, 2015. Copies of those account statements are enclosed with this letter. Hennessy learned recently that nearly all of those escrowed funds have been withdrawn from the Escrow Accounts, including leaving one Escrow Account with a negative balance. Hennessy has also learned that Patrick Brown, the principal in Performance, has been involuntarily admitted for psychiatric treatment and that the company's office has virtually shut down. Given those events, Hennessy is concerned that the money held in trust for Hennessy and its Customers in the Escrow Accounts has been improperly dissipated.

Hennessy hereby demands that Performance immediately providing an accounting of the Escrow Accounts including the identity of any persons or entities that received transfers from the Escrow Accounts since April 1, 2015. Hennessy also demands that Performance immediately cease transferring any additional funds out of the Escrow Accounts except in accordance with properly submitted and payable claims submitted by Hennessy's Customers.

Hennessy is prepared to take legal action to have the Escrow Accounts frozen if Performance does not comply with the above demands. Please contact me at your first convenience to discuss this matter.

Sincerely,

JAMES-BATES-BRANNAN-GROOVER-LLP

William J. Sheppard

WJS/cb
cc:     Mr. C. Devers Hays (via electronic mail)
        Mr. Joel McGlamry (via electronic mail)
        T. Daniel Brannan, Esq. (via electronic mail)

 **Bank of America**

P.O. Box 15284
Wilmington, DE 19850



Customer service information

📶 1.888.BUSINESS (1.888.287.4637)

🖂 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

PERFORMANCE AUTOMOTIVE MANAGEMENT LLC
"PERFORMANCE/HENNESSEY ESCROW ACCOUNT"
2211 NE 36TH ST STE 104
LIGHTHOUSE POINT, FL  33064-7537

# Your Business Economy Checking

for March 1, 2015 to March 31, 2015                                    Account number:         2927

**PERFORMANCE AUTOMOTIVE MANAGEMENT LLC**     **"PERFORMANCE/HENNESSEY ESCROW ACCOUNT"**

## Account summary

| | | |
|---|---|---|
| Beginning balance on March 1, 2015 | $736,465.61 | # of deposits/credits: 0 |
| Deposits and other credits | 0.00 | # of withdrawals/debits: 1 |
| Withdrawals and other debits | $4,388.97 | # of deposited items: 0 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -0.00 | Average ledger balance: $736,465.61 |
| **Ending balance on March 31, 2015** | **$732,076.64** | |



## Retirement could last longer than you might think

For 5 strategies to help you avoid outliving your savings, visit **merrilledge.com/5-strategies**

MERRILL EDGE
Bank of America
Corporation

Merrill Edge® is available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), and consists of the Merrill Edge Advisory Center™ (investment guidance) and self-directed online investing. MLPF&S is a registered broker-dealer, member SIPC and a wholly owned subsidiary of Bank of America Corporation. Merrill Lynch, Merrill Edge, the Merrill Edge logo, and Merrill Edge Advisory Center are trademarks of Bank of America Corporation. ARJB3CX9

Investment products: | Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |

 **Bank of America** 

P.O. Box 15284
Wilmington, DE 19850

Customer service information

ﮩ))  1.888.BUSINESS (1.888.287.4637)

⌕  bankofamerica.com

✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

PERFORMANCE AUTOMOTIVE MANAGEMENT LLC
"PERFORMANCE/HENNESSEY ESCROW ACCOUNT"
2211 NE 36TH ST STE 104
LIGHTHOUSE POINT, FL  33064-7537

# Your Business Economy Checking

for March 1, 2015 to March 31, 2015                       Account number:          6320

**PERFORMANCE AUTOMOTIVE MANAGEMENT LLC     "PERFORMANCE/HENNESSEY ESCROW ACCOUNT"**

## Account summary

| | | |
|---|---|---|
| Beginning balance on March 1, 2015 | $937,798.08 | # of deposits/credits: 0 |
| Deposits and other credits | 0.00 | # of withdrawals/debits: 1 |
| Withdrawals and other debits | $11,744.21 | # of deposited items: 0 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -0.00 | Average ledger balance: $937,798.08 |
| **Ending balance on March 31, 2015** | **$926,053.87** | |



Retirement could last longer than you might think

For 5 strategies to help you avoid outliving your savings,
visit **merrilledge.com/5-strategies**

MERRILL EDGE
Bank of America Corporation

Merrill Edge® is available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), and consists of the Merrill Edge Advisory Center™ (investment guidance) and self-directed online investing. MLPF&S is a registered broker-dealer, member SIPC and a wholly owned subsidiary of Bank of America Corporation. Merrill Lynch, Merrill Edge, the Merrill Edge logo, and Merrill Edge Advisory Center are trademarks of Bank of America Corporation. ARJB3OX9

Investment products:  | Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value

# Analyzed Business Checking

Account number:     8088   ■   March 1, 2015 - March 31, 2015   ■   Page 1 of 2





PERFORMANCE AUTOMOTIVE MGMT, INC.
2211 E SAMPLE RD STE 103
LIGHTHOUSE POINT FL 33064-7537

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
**1-800-CALL-WELLS** (1-800-225-5935)

*Online: wellsfargo.com*

*Write:* Wells Fargo Bank, N.A. (287)
Broward Business Banking - 2
P.O. Box 6995
Portland, OR  97228-6995

## Account summary

### *Analyzed Business Checking*

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 8088 | $1,008,201.07 | $97,255.00 | -$21,644.07 | $1,083,812.17 |

## Credits

**Electronic deposits/bank credits**

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 03/02 | 1,668.00 | Desktop Check Deposit |
| | 03/04 | 13,777.00 | Desktop Check Deposit |
| | 03/06 | 1,390.00 | Desktop Check Deposit |
| | 03/09 | 5,162.00 | Desktop Check Deposit |
| | 03/10 | 6,434.00 | Desktop Check Deposit |
| | 03/11 | 3,126.00 | Desktop Check Deposit |
| | 03/18 | 6,171.00 | Desktop Check Deposit |
| | 03/25 | 59,527.00 | Desktop Check Deposit |
| | | $97,255.00 | **Total electronic deposits/bank credits** |
| | | $97,255.00 | **Total credits** |

## Debits

**Electronic debits/bank debits**

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 03/02 | 2,000.00 | Online Transfer to Performance Automotive M Business Checking xxxxxx9020 Ref #Ibexsmxcwv on 03/02/15 |
| | 03/02 | 4,644.07 | Online Transfer to Performance Automotive M Business Checking xxxxxx9020 Ref #Ibecfbzghw on 03/02/15 |
| | 03/05 | 15,000.00 | Online Transfer to Performance Automotive M Business Checking xxxxxx9020 Ref #Iben4Jblf7 on 03/05/15 |

(287)
Sheet Seq = 0004412
Sheet 00001 of 00002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HENNESSY CADILLAC, INC.,<br>VALLEY PARTNERS, INC.,<br>TUXEDO PARTNERS, INC., and<br>WOODSTOCK PARTNERS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>PERFORMANCE AUTOMOTIVE<br>MANAGEMENT, INC., and<br>PATRICK BROWN,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION FILE<br>NO. _____ |

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter having come before the Court on the Verified Complaint for Damages and Injunctive Relief and the Motion of Plaintiffs Hennessy Cadillac, Inc., Valley Partners, Inc., Tuxedo Partners, Inc., and Woodstock Partners, LLC (collectively the "Hennessy Auto Dealerships"), and it appearing that Defendant Performance Automotive Management, Inc. ("Performance"), by and through Defendant Patrick Brown ("Brown"), established certain accounts (collectively the "Escrow Accounts") into which funds were deposited to be held in escrow for the benefit of the Hennessy Auto Dealerships and their customers (the "Customers"), and it appearing that funds in the Escrow Accounts have been and are being



dissipated for purposes other than those agreed with the Hennessy Auto Dealerships, and for good cause shown,

IT IS HEREBY ORDERED that the Escrow Accounts are hereby frozen for a period of fourteen (14) days from entry of this Order.  All parties, including the institutions in which the escrow Accounts are maintained, are hereby order to cease and desist all activities in the Escrow Accounts and to hold the funds therein until further order of this Court.

IT IS HEREBY FURTHER ORDERED that Performance and Brown shall provide to counsel for the Hennessy Auto Dealerships account statements for the Escrow Accounts for the period from January 1, 2015, and continuing through July 31, 2015.  Such statements shall be produced on or before August 6, 2015.

IT IS HEREBY FURTHER ORDERED that the Hennessy Auto Dealerships shall be entitled to immediately commence discovery, including the issuance of subpoenas to third parties, in order to obtain information and documents concerning the use of funds contained in the Escrow Accounts.

SO ORDERED, this _____ day of July, 2015.


_____
_____, Judge
United States District Court for the
Northern District of Georgia
Atlanta Division